**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**LAS CRUCES PUBLIC SCHOOLS,**
   **Plaintiff**

**v.**             NO._____

**REBECCA MARTOS and CARLOS MARTOS,**
**as parents of K.M.,**
    **Defendants**

**ORIGINAL COMPLAINT FOR REVIEW**
**OF IDEA ADMINISTRATIVE DECISION**
**AND DECISION UNDER NEW MEXICO'S LAWS**
**FOR GIFTED STUDENTS**

## I.   NATURE OF THE CASE

1.  Las Cruces Public Schools ("LCPS" or "Plaintiff") files this Complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et seq. and 6.31.2(I)(24) NMAC over and against Rebecca Martos and Carlos Martos, as parents of K.M. ("Defendants"), challenging as legally erroneous and unsupported by the evidence a portion of the findings and decision of a Special Education Hearing Officer ("SEHO") for the State of New Mexico, entered on February 23, 2022, in Public Education Department Docket No. 2122-09, styled K.M., a student, by and through her mother, Rebecca Martos, Petitioner, v. Las Cruces Public Schools, Respondent ("DPH Proceeding"), and seeking judgment and reversal of the findings and decisions of the SEHO as stated herein.

## II.  PARTIES

2.  Plaintiff, Board of Education of the Las Cruces Public Schools, is a public school district and political subdivision of the State of New Mexico, located in Las Cruces, New Mexico.

3.     Defendants, Rebecca Martos and Carlos Martos, are the parents of K.M., a minor child residing at 2296 Webb Road, Las Cruces, New Mexico 88012 and may be served at such address.

### III.     JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 20 U.S.C. §§1415(i)(2) and (3) and under 28 U.S.C. §1331.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

### IV.     PROCEDURAL HISTORY

6.     Defendants filed a due process complaint under the IDEA against LCPS on September 9, 2021 (DPH Complaint), seeking a finding that LCPS: (a) violated the IDEA and denied K.M. a free appropriate public education ("FAPE") under the IDEA by holding an Individualized Educational Program ("IEP") meeting without proper notice to the Defendants; (b) violated the Family Educational Rights and Privacy Act ("FERPA") and the Health Insurance Portability and Accountability Act ("HIPAA"), allegedly resulting in a denial of FAPE under the IDEA; (c) failed to provide special education and related services in conformity with K.M.'s IEP; and (d) violated Section 504 of the of the Rehabilitation   Act, 20 U.S.C. § 794 ("Section 504") and the Americans with Disabilities Act ("ADA").  Defendants' Complaint also raised claims of a tort, negligence, and malice, violation of the Student Handbook, Board Policy, the District's Code of Ethical Responsibility and Professional Conduct, bad faith, gross misjudgment, and deliberate indifference.

7.     LCPS timely filed a Motion to Dismiss and, in the alternative, challenge to the sufficiency of the DPH Complaint, on September 20, 2021.

8.     On September 23, 2021, the SEHO entered a Sufficiency Determination Order, denying LCPS's challenge to the sufficiency of the DPH Complaint, finding the Complaint sufficient "except for alleging child find FAPE violations" and allowing Defendants to amend their Complaint.

9.     On September 27, 2021, the SEHO entered a Prehearing Order and Extension Order, setting deadlines for the Defendants to respond to Plaintiff's Motion to Dismiss and for a reply.  The SEHO also refused Plaintiff's request to identify the issues and provided the Defendants with an extension to address same.

10.     On September 30, 2021, Petitioner filed an Amended Complaint, repeating the allegations in the original Complaint and alleging that: (a) K.M. is eligible for accommodations under Section 504 due to an "emotional disturbance and an orthopedic impairment which resulted in bullying and harassment" "adversely affect STUDENT's educational performance and denial of FAPE" [sic] and (b) LCPS "committed a procedural violation of the IDEA's Child Find and Section 504."

11.     On October 28, 2021, the SEHO entered an Order Addressing Motion to Dismiss, dismissing Defendants' claims under HIPAA, Section 504, the ADA, FERPA, tort law, negligence, and malice, violation of the Student Handbook, Board Policy, the District's Code of Ethical Responsibility and Professional Conduct, bad faith, gross misjudgment, deliberate indifference, and for monetary damages, attorneys' fees, and costs.  The SEHO deferred his ruling on Plaintiff's Motion to Dismiss Defendants' claims for counseling and medical fees, Plaintiffs' Motion to Dismiss for failure to exhaust administrative remedies as to the appropriateness of the gifted IEP, and Plaintiff's Motion to Dismiss Plaintiff's claims for supplementary services until after the conclusion of the hearing.  The SEHO denied Plaintiff's motion to dismiss Defendants'

claims related to an alleged denial of FAPE for K.M. as a gifted student; child find claims; the alleged failure to evaluate K.M.'s mental health needs; and Defendants' claims as to the implementation of K.M.'s gifted IEP for failure to state a cause of action.

12.     A hearing on the Amended Complaint was held on November 29 and 30, December 1, 2, 14, and 15, 2022.

13.     On February 23, 2022, the SEHO entered a decision in favor of Defendants and adverse to Plaintiff.

## V.     FACTS

14.     Throughout the statutory period, K.M. resided within the geographical boundaries of, and was enrolled in, LCPS.

15.     K.M. attended Centennial High School ("CHS") in LCPS from the beginning of the 2019/2020 school year until mid-April, 2021.

16.     LCPS approved K.M.'s request for a transfer to Las Cruces High School ("LCHS") on or about April 8, 2021 (Ex. DDD:1).

17.     K.M. is currently an 11th grade student attending Las Cruces High School in LCPS.

18.     K.M. is eligible for services as a gifted student pursuant to New Mexico law.

19.     K.M. was diagnosed with scoliosis in 2018.

20.     During the 2019/2020 school year, K.M. participated in a non-academic/extra-curricular dance team, for which she was cleared by a physician to participate.

21.     In November 2019, K.M.'s doctor advised her to take a 2 week break from dance due to pain caused by her scoliosis.

22.     K.M.'s dance coach provided the two-week break and made changes to the dance routines to accommodate K.M.'s difficulty with performing a specific dance move called the penché pose.

23.     K.M. did not request any accommodations during the school day.

24.     In January 2020, K.M. was unable to participate in a dance competition because she had been sick with the flu and strep throat and was too weak and because she had missed practice due to her illness so had not learned the routine.

25.     K.M. and other students on the dance team received their letterman patches during the 2020/21 school year because the students were not on campus at the end of the 2019/2020 school year due to the COVID-19 pandemic.

26.     In November, 2019, Ms. Martos and another parent met with the CHS Athletic Director and Assistant Principal regarding concerns that the Dance Coach allowed students to critique each other, lacked knowledge, and was not approachable to her students (was "very short" with them), practices being closed to the public and a perceived "hostile environment" created by a choreographer and Ms. Martos felt was pushing students too hard, and financial concerns. Bullying was not mentioned; nor did Ms. Martos express that K.M. was experiencing anxiety.

27.     The Athletic Director addressed the parent concerns immediately with the Dance Coach who made changes to address the concerns and no further complaints or concerns were conveyed to him until Feb. 2021.

28.     LCPS closed all of its schools in March 2020, as required by the Governor's order issued due to the COVID-19 pandemic.

29.     LCPS schools remained closed to on-campus instruction at the beginning of the 2020/21 school year.

30.     The CHS dance team only met virtually between Dec. 2020 and Feb. 2021.

31.     K.M. was not on the dance team during the 2020/21 school year.

32.     On December 14, 2020. Ms. Martos reported to the CHS Principal that a dance team member had made fun of K.M.'s scoliosis during an end-of-the-year banquet speech given virtually in May 2020; that a parent of another dance team member (who had also been K.M's spirit team coach and journalism teacher in middle school) had told students that K.M. is autistic (which she is not); and that the dance coach had disclosed to other students that K.M. had scoliosis.

33.     The banquet was organized by the booster club and is not a school-sponsored event.

34.     These allegations were investigated, and the Principal determined that the allegations related to the parent/former coach and the current dance team coach were not substantiated. The allegation about the comment during the banquet was substantiated.

35.     The student who made the comment about K.M.'s diagnosis was no longer on the dance team, and the dance team was not meeting in person at the time the incident was reported.

36.     No on-going bullying was reported.

37.     In mid-January 2020, Ms. Martos called the CHS Section 504 Coordinator to request a Section 504 plan for K.M. to obtain accommodations for pain caused by her scoliosis.

38.     A Section 504 meeting was initially scheduled for Feb. 3, 2021, to consider K.M.'s eligibility under Section 504 and her need for accommodations under Section 504.

39.     On Jan. 25, 2021, Ms. Martos provided the Section 504 Coordinator with a letter from a physician indicating that K.M. had scoliosis and musculoskeletal pain. The letter did not indicate that accommodations were needed and did not mention anxiety.

40.     When the CHS Section 504 Coordinator learned that K.M. already had an IEP for giftedness, she advised Ms. M. that the IEP team would meet to consider K.M.'s needs for a health

care plan and Section 504 accommodations, so that all of K.M.'s accommodations would be documented in one place, as provided by LCPS procedures for students who have a gifted IEP and require accommodations.

41.     An IEP meeting was initially scheduled for Feb. 3, 2021, but Ms. Martos requested it be re-scheduled because she did not understand the reason that an IEP meeting, rather than a Section 504 meeting, had been scheduled to adopt the accommodations and health care plan she had requested.

42.     The Section 504 Coordinator and the Special Education Lead both spoke to Ms. Martos to explain the process for incorporating the Section 504 accommodations into the gifted IEP, and the IEP meeting was re-scheduled for Feb. 8, 2021, at Ms. Martos' request.

43.     On Feb. 8, 2021, the IEP team met via Zoom to consider K.M.'s need for accommodations and a health care plan.  One of the IEP team members called Ms. Martos because she was not present when the meeting started. The Special Education Lead explained that the Health Care plan would be added to the IEP and Ms. Martos acknowledged this.     The team was not able to go over the general education input or other parts of the IEP because Ms. Martos left the meeting after about eight minutes, but the health care plan was added.

44.     The school nurse spoke to Ms. Martos on Feb. 9, 2021, discussed K.M.'s needs and the wording Ms. Martos wanted in the health care plan, and amended the healthcare plan she had drafted for the Feb. 8th IEP meeting by adding all of the specific accommodations Ms. Martos requested.  Ms. Martos agreed with the accommodations listed.  Ms. M. did not request accommodations for anxiety or advise the nurse that K.M. had been bullied.

45.     On February 25, 2021, the CHS Principal and Director of Communications met with Mr. and Mrs. Martos.  During this meeting, the Martos' reported for the first time that K.M.

was suffering from anxiety due to the banquet comment and the alleged comments by the parent/former coach and K.M.'s current dance team coach.

46.     The Principal offered supports for K.M., including 1:1 tutoring, counseling services by the campus counselor as well as through La Clinica (a private health clinic housed at CHS),  a contact teacher for K.M.,  and a safe place for K.M. to go on campus.

47.     Ms. Martos rejected counseling by LCHS staff and through La Clinica and did not return K.M. to CHS campus.

48.     LCPS approved Defendants' request for a transfer to Las Cruces High School in April 2021.

49.     On March 4, 2021, Defendants provided a letter from Health Care Solutions indicating that K.M. had anxiety and was seeing a counselor outside of school but may also need periodic visits with the school counselor.

50.     CHS did not have another IEP meeting to put accommodations into place for K.M. because she transferred to LCHS.

51.     An IEP meeting was held at LCHS on May 12, 2021, and Section 504 accommodations for anxiety and scoliosis were included in the IEP.  Defendants did not request any other changes to K.M.'s IEP.

52.     K.M. is identified as a student with a physical disability and an emotional disability under Section 504.

53.     LCPS does not have reason to suspect that K.M. requires special education and related services under the IDEA for her scoliosis or anxiety, and there was no evidence that she does.

54.     During the COVID-19 pandemic, it was not uncommon for students, including gifted students, to struggle with on-line learning, including grades and attendance.  K.M. was not struggling more than other students.

55.     K.M. is an A/B student in honors classes with the exception of one C- in Honors Algebra II her sophomore year, which was the result of having obtained a D+ the fourth nine weeks after her transfer to LCHS (where the class had covered more of the curriculum than had the class at CHS).  Her grade point average ("GPA") at the end of the 2018/19 school year was 3.0, and her GPA at the end of 2019/2020 (the year she was on the dance team) was 3.7143.

56.     K.M. was actively involved in student government and extra-curricular activities, had friends, held a job, and appeared socially and emotionally well-adjusted while at school  She had been provided with a pressure pass to see the school counselor if needed but did not use it; nor did she seek guidance from her AED Facilitator.

57.     At the mandatory resolution meeting for the DPH Proceeding, in an effort to resolve the Complaint the District offered to evaluate K.M. but Ms. M. declined the evaluation. LCPS also offered a comprehensive evaluation of K.M. at an IEP team meeting in November 2021 due to a traumatic brain injury K.M. had suffered from an automobile accident in September 2021.

58.     Ms. Martos reported that K.M. was too ill to be evaluated following her accident.

59.     Ms. Martos refused to talk about anything at the resolution meeting in the DPH Proceeding because the meeting was not confidential.

## VI.     IDEA CAUSE OF ACTION

60.     The SEHO erred as a matter of law in failing to dismiss the Defendants' claims related to the appropriateness and implementation of K.M.'s IEP because Defendants failed to exhaust their administrative remedies.   Defendants did not request a change in K.M.'s

identification, evaluation, educational placement or the provision of FAPE or otherwise request the relief requested in the DPH Complaint prior to filing same, and LCPS had never refused the relief requested.

61.     The SEHO erred as a matter of law in failing to dismiss the Amended Complaint due to the Defendants' failure to state a cause of action under the IDEA. The Amended Complaint failed to identify any basis for a special education evaluation under the IDEA.  Although Defendants asserted that the student has an orthopedic impairment and an emotional disturbance, Defendants did not allege any facts to support a claim that K.M. requires special education and related services due to those alleged disabilities; nor did Defendants allege that K.M. required special education.  Instead, defendants alleged only that K.M. needed *either* special education or Section 504 services.  The Amended Complaint failed to state a cause of action under the IDEA and should have been dismissed.

62.     The SEHO erred as a matter of law in refusing to identify the issues until November 17, 2021 (two days after the deadline for the parties to exchange exhibits; the same day the parties' list of witnesses and exhibits was due; and 2 days prior to the first day of the hearing).    On September 13, 2021, Plaintiff requested "an initial pre-hearing conference pursuant to 6.31.2.13(I)(12) NMAC within 14 days from the date the Complaint was filed to: (a) identify the issues (disputed claims and defenses) to be decided at the hearing and the relief sought."  An initial pre-hearing conference was held on September 27, 2021, and Plaintiff again requested the issues be identified.  After the Hearing Officer asked Defendants' counsel if she was requesting an extension of time for the identification of the issues, Defendants did request an extension of time for same.  Plaintiff objected on the basis that Plaintiff was unable to identify any IDEA issues based on the pleadings and would therefore not have a fair opportunity to resolve the Complaint

at the upcoming mediation without an order identifying the IDEA issues.  Plaintiff was unable to prepare for both mediation and the hearing in this matter because the issues had not been timely identified and were not clear in the Amended Complaint.

63.     The SEHO erred as a matter of law in admitting Exhibit B over Plaintiffs' objection. Exhibit B contains hearsay within hearsay.   The SEHO erred in relying on statements contained in Exhibit B for the truth of the matter asserted.  The SEHO relied on hearsay statements within Exhibit B for some of his findings of fact, including finding of fact number 10.

64.     The SEHO erred as a matter of law in allowing the Defendants to admit exhibits that the Defendants had not disclosed, including the Plaintiff's exhibits during Defendants' case n chief (Ex. 13).  The New Mexico regulations related to due process proceedings provided, "Any party to a hearing has the right to: ……. (c) prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before a regular hearing ……" 6.31.2 (I)(14) NMAC.   This Rule does not require a party show that they are prejudiced or surprised by the admission of evidence not properly disclosed.  Nevertheless, Plaintiff was unfairly prejudiced by allowing the admission of these exhibits during Defendants' case in chief.  A DPH respondent is not required to offer evidence when the petitioner has not met their burden of persuasion.  At the same time, a respondent is required by 6.31.2 (I)(14) NMAC to disclose any documentary evidence it may need to offer in the hearing five business days prior to the hearing. This requirement necessitated that the Plaintiff disclose exhibits that it may later choose, in its sole discretion, not to offer.

65.     Defendants in the DPH Proceeding asserted that the Feb. 8, 2021, IEP (Exhibit 13) was not appropriate and/or that LCPS failed to implement same.  Yet, Defendants failed to disclose the IEP and could not, therefore, meet their burden of persuasion.  Allowing Defendants to use the

Plaintiff's exhibits to meet their burden of persuasion not only violated the clear and strict rules regarding the timely disclosure of documents and evidence for the due process hearing but also unfairly deprived the Plaintiff of its right to determine what evidence it wished to offer in order to provide its defense and provided the Defendants the advantage of using the exhibits the Plaintiff had to disclose but may not offer.

66.     The SEHO erred in making findings of fact based on Exhibit 13 and the appropriateness of Ex. 13, which should not have been admitted.

67.     The SEHO erred as a matter of law in overruling Plaintiff's objection to evidence regarding K.M.'s absences. Absences were not identified as an issue in either the Amended Complaint or the order identifying the issues, and Plaintiff was prejudiced by the admission of this evidence as it was not prepared to defend claims related to absences and psychosomatic complaints.

68.     The SEHO erred as a matter of a law in overruling Plaintiff's objections to the testimony of Dr. Crews related to alleged bullying other than the banquet speech incident and related to social media posts that were not produced to Plaintiff in response to Plaintiff's request for production and the SEHO's order for production, were not disclosed, and were not mentioned in the Amended Complaint.  Plaintiff was not on notice of any bullying allegations other than the banquet speech, and it was error to allow evidence related to any alleged additional bullying and its alleged impact on K.M.

69.     The SEHO's finding of fact number 10 that Ms. Martos notified LCPS in December 2019 that performing the penché pose compromised K.M.'s medical and emotional health is clearly erroneous and not supported by the evidence.  This finding is based on  an erroneous reading of a hearsay statement contained in Exhibit B, which was admitted in error.

70.     The SEHO's finding of fact number 21 that the dance team was physical education is clearly erroneous and not supported by the evidence.   The evidence was undisputed that the dance team is only an extra-curricular activity for which students do not earn credit.

71.     The SEHO's finding of fact number 25 that the Plaintiff "was on notice of suspicions of orthopedic impairment and emotional disturbance, with impact in education in the nonacademic area of dance" is clearly erroneous and not supported by the evidence.

72.     To the extent finding of fact number 25 is also a conclusion of law, the conclusion that the impact on K.M. in dance meets the criteria under the IDEA for an orthopedic impairment is an error as a matter of law.   "Orthopedic impairment" under the IDEA means "a severe orthopedic impairment that adversely affects the child's educational performance."  An impact on an extra-curricular activity for which no credit is given does not constitute an impact on "educational performance."

73.     The SEHO's finding of fact number 30 that the February 8, 2021, IEP meeting was initially set only to discuss Section 504 accommodations is clearly erroneous and not supported by the evidence.  The IEP meeting was scheduled to review K.M.'s entire IEP, as well as to consider Section 504 accommodations.

74.     The SEHO's finding of fact number 31 that K.M.'s mother wanted to be prepared to discuss anxiety and the mental well-being of K.M.  in the Feb. 8, 2021, IEP meeting and the implication that she did not stay for the meeting because of her desire to discuss these issues is clearly erroneous and not supported by the evidence.  There was no evidence that anxiety was an issue until after the Feb. 8th meeting.

75.     The SEHO's finding of fact number 33 that LCPS continued the IEP meeting or finalized the Healthcare Plan and gifted services IEP after Ms. Martos left the Feb. 8, 2021, IEP

meeting is clearly erroneous and not supported by the evidence.  The evidence was undisputed that the District ended the IEP meeting as soon as Ms. Martos left the meeting and that because of this, the District was unable to complete the IEP.

76.     The SEHO's finding of fact number 34 that Ms. Martos was not provided the ability to meaningful participate in the Feb. 8, 2021, IEP meeting is clearly erroneous and not supported by the evidence.  Ms. Martos was present for the meeting but chose not to remain in the meeting. After she left, the meeting was discontinued.

77.     To the extent finding of fact number 34 is also a conclusion of law, it is erroneous as a matter of law.

78.     The SEHO's finding of fact number 36 that the Feb. 8, 2021, IEP and IEP team considered anything, or should have considered anything, other than the health care plan is clearly erroneous and not supported by the evidence.  LCPS was not able to complete the Feb. 8, 2021, IEP meeting because Ms. Martos left.

79.     The SEHO's implied conclusion of law in finding of fact number 36 that LCPS should have considered K.M.'s anxiety, nonacademic loss due to dance, and the penché pose and the "ridicule from scoliosis", or evaluating K.M. for orthopedic impairment or emotional disturbance is an error as a matter of law.  LCPS was not able to finish the IEP meeting because Ms. Martos left the meeting.  Ms. Martos did not request any changes to the IEP due to anxiety or the loss due to dance; nor did she advise LCPS at that time that K.M. had anxiety.  LCPS did not have any knowledge that K.M. had anxiety and did not have a reason to believe that K.M. was a student with a disability who, by reason thereof, required special education and related services. K.M. did not suffer a nonacademic loss due to dance or the penché pose.

80.     The SEHO's finding of fact number 39 that LCPS offered Defendants "generic counseling" is clearly erroneous and not supported by the evidence.   The SEHO based this finding on mere assumptions, with absolutely no evidence, based on the fact that the counseling offered to K.M. at La Clinica is available to all students. There was no testimony that the proffered counseling services were not appropriate for K.M. or that they would not be provided by a licensed clinical counselor based on K.M.'s individual needs; nor was this an issue raised in the Amended Complaint.

81.     The SEHO further erred as a matter of law in considering whether the counseling offered was appropriate to meet K.M.'s needs as this was not raised or identified as an issue in the Amended Complaint or the SEHO's order identifying the issues.  Plaintiff was not on notice that this was an issue and was not prepared to defend  against this claim, which was not even mentioned until the SEHO entered his decision.   Plaintiff was unfairly prejudiced by the SEHO's consideration of this issue.

82.     The SEHO's finding of fact number 42 that LCPS completed an Independent Educational Evaluation ("IEE") and that LCPS determined there was no need for an IEP to address K.M.'s needs due to scoliosis because she was intellectually gifted is clearly erroneous and not supported by the evidence.   LCPS reviewed the medical information from K.M.'s physician and made recommendations to the IEP team based on that review, but an IEE was not completed.

83.     The SEHO's finding of fact number 43 that "the IEE did not address nonacademic services, such as loss of dance, emotional disturbance, or other educational losses in grades" is clearly erroneous and not supported by the evidence.   There was no IEE, and K.M. did not suffer a loss of dance or in grades;  nor was K.M. eligible under the IDEA as a student with an emotional disturbance.

84. The SEHO's finding of fact number 44 that an objective reading and writing assessment showed K.M. to be reading at the 9th grade level is clearly erroneous and not supported by the evidence. In fact, the undisputed evidence was that K.M. is reading on or above grade level. The SEHO also erred in assuming that the reading level reflected in the assessment evidence a decline in K.M.'s reading level, as there was no evidence of K.M.'s prior reading level.

85. The SEHO's finding of fact number 46 that the IEE was not appropriate is clearly erroneous and not supported by the evidence.

86. The SEHO erred as a matter of law in considering what he misidentified as an IEE (the review of the physician's letters) because the appropriateness of the review was not identified as an issue in either the Amended Complaint or the Order identifying issues.  Plaintiff was not on notice that this was an issue and was not prepared to defend against this claim, which was not even mentioned until the SEHO entered his decision.

87. The SEHO's finding of fact number 47 that Defendants sought private counseling because the District did not "follow up with" Ms. Martos is clearly erroneous and not supported by the evidence.  Ms. Martos testified that she did not access the counseling offered by the District because she was concerned about whether information shared would remain confidential.  Ms. Martos rejected services from the District, including those available through the private health center.

88. The SEHO's finding of credibility as to Dr. C is not supported by substantial evidence.  Dr. C was a friend of the Defendants' counsel, was referred to him by the Defendants' counsel, and testified in error about his own assessment of K.M.'s depression.  Dr. C's testimony was also based on unsubstantiated hearsay.

89.     The SEHO's finding of fact number 54 that K.M. "lost her social connection and no longer had the confidence to go out in public again" is clearly erroneous and not supported by the evidence.   Additionally, there was no evidence that the District was aware of any of the statements made in Dr. C's records until after the DPH Complaint was filed.

90.     The SEHO's finding of fact number 59 that the May 6, 2021, consent to evaluate form was for gifted services only is clearly erroneous and not supported by the evidence.   The form speaks for itself and clearly described the option of additional assessment to identify another disability condition.

91.     The SEHO's finding of fact number 62 that the Section 504 accommodations and provisions of K.M.'s healthcare plan in the May 12, 2021, IEP are indicators of a disability under Section the IDEA is clearly erroneous and not supported by the evidence.   Eligibility criteria for Section 504 are different than the criteria under the IDEA, and evidence of a disability condition under Section 504 does not create a reason to suspect a disability under the IDEA. If it did, every student who is eligible for Section 504 would need to be evaluated under the IDEA. That is simply not the law.

92.     The SEHO erred as a matter of law as to any conclusions of law contained in finding of fact number 62 by conflating a Section 504 disability with an IDEA disability and concluding there was a reason to suspect an IDEA disability solely because K.M. has a Section 504 disability.

93.     The SEHO's finding of fact number 66 that as of May 12, 2021, LCPS was on notice of a suspicion of two disabilities for which an evaluation should have begun under the IDEA is clearly erroneous and not supported by the evidence.   There was no evidence that K.M. may need special education and related services.

94.     To the extent finding of fact number 66 is a conclusion of law, it is error as a matter of law.

95.     The SEHO's credibility determinations as to Ms. HS is not supported by substantial evidence.

96.     The SEHO's finding of fact number 89 that the resolution meeting following the filing of the Amended Complaint occurred "because of a subsequent automobile accident" and that the offer of the District during that resolution meeting should be given no weight is clearly erroneous and not supported by the evidence.   The District held a resolution meeting following the filing of the Amended Complaint, as is required by the IDEA. There was no evidence that the meeting itself or the offer of an evaluation made during the meeting was in any way due to the automobile accident suffered by K.M.

97.     The SEHO's conclusion that LCPS breached its duty to identify and evaluate K.M. for special education eligibility is an error as a matter of law.

98.     The SEHO's conclusion that K.M.'s inability to perform in dance was a basis to suspect that she required special education and related services due to her scoliosis is an error as a matter of law.   The evidence was undisputed that the dance team is solely an extra-curricular activity. It is not part of the general education curriculum.  Additionally, K.M. was only slightly limited in dance in that she had to take a 2-week break in November, 2019, and had difficulty performing a single pose, for which accommodations were made.

99.     The SEHO's implied conclusion of law that LCPS should have supervised or "put a halt to the banquet" is an error as a matter of law.   The banquet was organized and run by the booster club.  Additionally, this is outside the jurisdiction of a special education hearing officer and was never raised or identified as an issue in the DPH Proceeding.

100.    The SEHO erred as a matter of law in concluding that LCPS was on notice to suspect a disability under the IDEA in mid-December 2020. The SEHO further erred in concluding that any statements related to K.M. not being able to participate in dance created a reason to suspect that she qualified for special education as a student with an orthopedic impairment under the IDEA and that interim failing grades due to missing assignments during remote learning created a reason to suspect that K.M. qualified for special education as a student with an emotional disturbance under the IDEA.

101.    The SEHO's finding that Dr. C accurately diagnosed K.M. with borderline depression is clearly erroneous and not supported by the evidence.  Although Dr. C did testify that K.M. had borderline depression, his testimony was not supported by his records.  Dr. C used the Beck's Depression Inventory ("BDI") to assess K.M. for depression.  She scored a 10-12 on the BDI, which is in the lowest score bracket (0-13) and according to the BDI scoring protocol should be interpreted as "minimal depression."   Additionally, K.M. did not begin to see Dr. C until March 25, 2021.

102.    The SEHO's findings that K.M.'s slight depression during the COVID-19 pandemic was a reason to suspect that she might qualify for special education as a student with an emotional disturbance under the IDEA is clearly erroneous and not supported by the evidence. There was no evidence that any depression experienced by K.M. was related solely to the events that occurred while she was on the dance team.  There was evidence that K.M., like many people, suffered depression because of life-style changes necessitated by the COVID-19 pandemic and because of a note her mother had written that contained false information about K.M.'s former dance coach.

103.    The SEHO erred as a matter of law in concluding that the Defendants "proved by a preponderance of evidence that the LEA did not meet its burden to suspect a disability of the Student as of around mid-December 2020."  This conclusion erroneously shifted the burden of proof, which was on the Defendants.

104.    The SEHO erred in attributing statements made by Defendants during a February, 2021, meeting to the December, 2020 conversation between Ms. Martos and the CHD Principal.

105.    The SEHO erred in finding that K.M.' ability to participate in the dance team was compromised because of the statement made during the banquet. There was no evidence to support this finding.

106.    The SEHO erred as a matter of law in concluding that the District violated its Child Find obligation.  The SEHO erred as a matter of law in holding that a suspicion arises when the district is put on notice that symptoms of a disability are displayed. The Child Find obligation does not arise until the District has both notice of a disability and that the child may, by reason of that disability, require special education.    Not every student with a disability requires special education, and K.M. did not.

107.    The SEHO further erred as a matter of law in concluding that a student's inability to participate in extra-curricular activities evidences a reason to suspect that the student may need special education and related services.

108.    The SEHO erred as a matter of law in concluding that the need for counseling services evidences a need for special education.  The IDEA regulations provide, "…. if it is determined, through an appropriate evaluation under §§300.304 through 300.311, that a child has one of the disabilities identified in paragraph (a)(1) of this section, but only needs a related service

and not special education, the child is not a child with a disability under" 34 CFR §300.8.  34 CFR §300.8(a)(2)(i).

109.    The SEHO erred in failing to find that Defendants did not accept the District's offer for a multi-disciplinary team  evaluation made at the resolution meeting.

110.    The SEHO erred in concluding that the Feb. 8, 2021, Healthcare Plan should have addressed the penché pose.  K.M. was no longer on the dance team and did not express an interest in returning to dance.

111.    The SEHO erred in concluding that there was a reason to suspect that K.M.'s scoliosis impacted her educational benefits and created a need for special education based on a statement in the Healthcare Plan that scoliosis creates a "*potential* for 'impaired educational, social, and coping skills" (emphasis added).

112.    The SEHO erred as a matter of law in concluding that the failure to evaluate K.M. for special education caused a deprivation of educational benefits. There is no evidence that K.M. would meet the eligibility requirements under the IDEA if she was evaluated; thus, the conclusion that she was deprived of educational benefits is not supported by the evidence.

113.    The SEHO erred as a matter of law in concluding that Section 504 accommodations were insufficient.

114.    The SEHO's implied finding of fact that K.M. regressed in her ability to read and is "now reading at the 9th grade level" is clearly erroneous and not supported by the evidence.

115.    The SEHO's finding that the District "ignore[ed] the Student's Mother's concerns" about the February 2021 IEP meeting is clearly erroneous and not supported by the evidence.  This meeting was re-scheduled to a mutually agreeable time and date at the request of Ms. Martos.

116.    The SEHO erred as a matter of law in awarding Defendants compensatory services (including 1:1 tutoring for reading and counseling) when K.M. has not yet been determined to be eligible as a student with a disability under the IDEA.  A hearing officer's determination must generally be based on substantive grounds as to whether a child received a FAPE.  *See* 34 CFR § 300.513(a). If a procedural violation occurs, then it results in a denial of a FAPE only if the procedural inadequacies: (1) impeded a child's right to a free appropriate public education, (2) significantly impeded the parent's opportunity to participate in the decision-making process for a provision of a free appropriate public education; or (3) caused deprivation of educational benefit. *Id.* at (a)(2).  In other words, technical deviations alone are insufficient to establish a denial of free appropriate public education. *Urban,* 89 F.3d at 720.  Procedural defects must amount to substantive harm for compensatory services. *Garcia,* 520 F.3d at 1130.   K.M. cannot have been denied a FAPE under the IDEA if she does not meet the IDEA eligibility criteria.

117.    The SEHO erred as a matter of law in awarding 1:1 tutoring in reading because there was no evidence that K.M. suffered a loss of reading ability, K.M. scored at or above the District benchmark and higher than 49% of the students nationally in the same grade.  Additionally, K.M.'s reading was not an issue raised in the DPH Proceeding, and the SEHO erred in addressing it based on a single benchmark assessment. Plaintiff was not on notice of any claims related to reading instruction or progress, and the consideration of this as an issue unfairly prejudiced the Plaintiff.

118.    The SEHO erred as a matter of law in ordering LCPS to provide reading tutoring "to bring [K.M.] to her 11th grade reading level from her current 9th grade level, consistent with her gifted abilities."  The IDEA does not provide for special education to meet the potential of gifted students, and reading instruction as part of K.M.'s gifted IEP was not an issue in the DPH

Proceeding.  Additionally, the order to "bring her to her 11th grade level" is vague as there is no standard for measurement, especially in light of the fact that the benchmark assessment on which the SEHO based his findings shows that K.M. is ready for instruction in all sub-categories at either the 11th or 12th grade level.

119.    The SEHO erred as a matter of law in ordering an IEE for emotional disturbance and orthopedic impairment as there was no evidence of a reason to suspect that K.M. requires special education and related services due to either an orthopedic impairment or an emotional disturbance.

120.    The SEHO erred as a matter of law in ordering compensatory counseling services. K.M. has not been identified as a student with a disability under the IDEA; if a student needs a related service only, the student is not eligible under the IDEA; and Defendants waived their right to compensatory counseling services when they declined the District's offer for counseling services.

121.    The SEHO erred in ordering counseling to be provide by a "licensed counselor" as this term is not clear, and counseling services in public schools are typically provided by a social worker.  There was no evidence that counseling services must be provided by a licensed counselor. Additionally, appropriate counseling is available through the private clinic housed at the LCPS high school campuses. There was no evidence that this counseling would be inadequate, and the SEHO's finding that the counseling was "generic" and somehow deficient merely because it is available to all students is clearly erroneous and not supported by the evidence.

122.    The SEHO erred in ordering counseling that is "fluid" and that must "continue until the Student reaches that place where she should be absent the deficiency due to the child find

violation of FAPE." This Order is vague and the stated point through which counseling must continue is subject to different interpretations.

123.   The SEHO erred in considering K.M.'s unique needs as a gifted student as a basis for determining that the District should have suspected that K.M. requires special education and related services. While a district is required to consider the unique needs of a student when developing the IEP, the unique needs of students who are gifted do not create a heightened obligation of the District to evaluate a student for special education and provide an IEP that maximizes the potential of a gifted student. The SEHO's conclusion that K.M. had friends but that her unique needs as a gifted student (i.e., her concern about what others think of her, and thus a reasonable inference is that she sought to put her best efforts toward trying to 'fit in'") evidenced that she may have a disability under the IDEA was erroneous.

124.   Similarly, the SEHO erred as  a matter of law in considering K.M.'s unique circumstances of being on the dance team and having to take a break from dance due to her scoliosis as a basis for suspecting an orthopedic impairment. When determining whether or not a student has a disability and whether that disability adversely affects their educational performance, the standard is not based on the "unique circumstances" of the student. The SEHO erroneously held that K.M's, as a gifted student, "uniquely, as a Student not wanting to be stigmatized by a disability, was unable to perform some extracurricular school dance functions due to scoliosis, was then mocked by dance teammates because of it, and suffered emotional consequences", and that this information should have been "considered as identification or evaluation criteria for special education eligibility." The SEHO based his decision on "who this Student is in part because of the incidents, uniquely, and how they are relevant to rise to a suspicion for identification and evaluation." Not only is the issue of "who this Student is ….. because of the incidents"  outside

the jurisdiction of a special education hearing officer, it is error to conclude that the District should have suspected that K.M. had an emotional disturbance because of her unique circumstance as a gifted student and, by reason thereof, required special education (erroneously interpreted by the SEHO as education needed to help her reach her potential as a gifted student).

WHEREFORE, PREMISES CONSIDERED, Las Cruces Public Schools, respectfully requests that the erroneous findings of fact and conclusions of law set out above be reversed, that that the Court enter judgment wholly in favor of Las Cruces Public Schools and holding that Las Cruces Public Schools is the prevailing party in both the underlying proceeding and this proceeding, and awarding Las Cruces Public Schools its costs and any and all other relief to which it may show itself to be justly entitled.

Respectfully submitted,

WALSH GALLEGOS TREVIÑO
KYLE & ROBINSON, P.C.


BY:  /s/ Evelyn N. Howard-Hand
      EVELYN N. HOWARD-HAND
      New Mexico State Bar No. 144001

      500 Marquette Avenue NW, Suite 1310
      Albuquerque, NM   87102-5316
      Telephone: (505) 243-6864
      Facsimile: (505) 843-9318

      ATTORNEYS FOR PLAINTIFF