IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAS CRUCES PUBLIC SCHOOLS,

   Plaintiff,

v.                                                                                        Civ. No. 22-219 GBW/JHR

REBECCA MARTOS and
CARLOS MARTOS, *as parents of* K.M.,

   Defendants.

## STIPULATED AGREED JUDGMENT

THIS MATTER comes before the Court upon the Stipulated Agreed Judgment[1] which was submitted to the Court by Las Cruces Public Schools ("LCPS", "District" or "Plaintiff") and Rebecca Martos and Carlos Martos, individually and as parents of K.M., and Kristina Martos ("Martos" or "Defendants").  Having considered the Stipulated Agreed Judgment, which was approved in form and substance by the parties through counsel, the Administrative Record filed with this Court, and the additional stipulation by Defendants as to facts stated herein, the Court agrees that the findings of fact and conclusions of law stated herein are correct and that Judgment should be entered as reflected herein.

   IT IS THEREFORE ORDERED:

---

[1] See Exhibit A for the Stipulated Agreed Judgment signed by the parties.

1

1. The SEHO erred in taking jurisdiction over Defendants' claims related to scoliosis because the Amended Complaint filed by Defendants did not plead that K.M. required special education and related services due to her scoliosis. Defendants' Amended Complaint supported only that their claims related to K.M.'s scoliosis arise under Section 504 of the Rehabilitation Act of 1973.

2. The SEHO's finding of fact number 21 that the dance team was physical education is clearly erroneous and not supported by the evidence. At LCPS, the dance team is only an extra-curricular activity for which students do not earn credit. It is not physical education, and there was no evidence to the contrary.

3. The SEHO's finding of fact number 25 that the Plaintiff "was on notice of suspicions of orthopedic impairment and emotional disturbance, with impact in education in the nonacademic area of dance" is clearly erroneous and not supported by the evidence. Students are not eligible for special education and related services under the Individuals with Disabilities Act ("IDEA") based on a disability condition that impacts only nonacademic activities. Additionally, the evidence was undisputed that during the 2019/2020 school year K.M. required only a 2-week break from dance and accommodations for dance routines that involved a specific pose (i.e., the penché pose) (see pg. 37-39 of the DPH Decision). This evidence is insufficient as a matter of law to support a finding or conclusion that K.M. may have needed special education and related services.

4.     To the extent finding of fact number 25 is also a conclusion of law, the conclusion that the impact on K.M. in only a non-academic activity meets the criteria under the IDEA for an orthopedic impairment or an emotional disturbance is an error as a matter of law.

5.     The SEHO's finding of fact number 39 that LCPS offered Defendants "generic counseling" is clearly erroneous and not supported by the evidence.  The principal at Centennial High School offered supports for K.M., including 1:1 tutoring, counseling services by the campus counselor as well as through La Clinica (a private health clinic housed at CHS), a contact teacher for K.M., and a safe place for K.M. to go on campus.  La Clinica provides individual counseling services to students at LCPS through a Licensed professional Counselors ("LPC"), as needed.  There was no evidence that the counseling provided by La Clinica is "generic" or that it would not meet the needs of K.M.  Ms. Martos rejected counseling by LCHS staff and through La Clinica because she was concerned about confidentiality (Tr. 687:2-688:9).

6.     The SEHO erred as a matter of law as to any conclusions of law contained in finding of fact number 62 by conflating a Section 504 disability with an IDEA OI disability and concluding there was a reason to suspect an IDEA OI disability solely because K.M. has a Section 504 disability.  All findings of fact that LCPS should have suspected K.M. has an OI disability under the IDEA and should have evaluated her for same are clearly erroneous, and all conclusions of law holding that LCPS should have

3

suspected that K.M. has an OI disability under the IDEA and should have evaluated her for same are erroneous as a matter of law Eligibility criteria for Section 504 are different than the criteria under the IDEA, and evidence of a disability condition under Section 504 does not create a reason to suspect a disability under the IDEA. If it did, every student who is eligible for Section 504 would need to be evaluated under the IDEA. That is simply not the law. The following findings of fact and conclusions of law are erroneous as to the OI: 62, 66.

7. To the extent finding of fact number 66 is a conclusion of law, it is error as a matter of law.

8. The SEHO's implied conclusion of law that LCPS should have supervised or "put a halt to the banquet" is an error as a matter of law. The banquet was organized and run by the booster club. Additionally, this is outside the jurisdiction of a special education hearing officer and was never raised or identified as an issue in the DPH Proceeding.

9. The SEHO erroneously considered the "Unique circumstances at the times involved" of K.M. as a gifted student, the "competitive edge" of the dance team, and "the impact on [sic] the Student's scoliosis had on the Student's extracurricular dance activity" when determining that LCPS breached its duty to identify and evaluate K.M. for special education eligibility. In reaching this conclusion, the SEHO relied on *Endrew F. v. Douglas County Sch. Distr. RE-1*, 580 U.S. 386, 137 S.Ct. 988 (2017). *Endrew* is not a

child find case and does not address the circumstances that should be considered for child find.  Rather, the Supreme Court in *Endrew* explains that "the adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Endrew*, 137 S. Ct. at 1001.  This is a standard for measuring the adequacy of an IEP, which must be individualized based on the needs of the student. It is not a standard for determining that a gifted student who is not reaching her potential should be evaluated for special education and related services based on her unique needs as a gifted student.

10. The SEHO erred as a matter of law in concluding that the Defendants "proved by a preponderance of evidence that the LEA did not meet its burden to suspect a disability of the Student as of around mid-December 2020."  There was insufficient evidence as a matter of law that LCPS had reason to suspect that K.M. required special education and IDEA related services due to a disability condition.

11. The SEHO erred as a matter of law in holding that a suspicion arises when the district is put on notice that symptoms of a disability are displayed.  The Child Find duty is triggered when the district has *both* (i) a reason to suspect a disability; and (ii) a reason to suspect that due to the disability, the student needs special education and related services. *Boutelle v. Las Cruces Public Schools*, 2019 WL 2061086 *9 (D.N.M. 2019); *Richard R.*, 567 F.Supp.2d 918, 950 (W.D. Tex. 2008); *Reg'l Sch. Dist. No. 9 Bd. of Educ. v. Mr. & Mrs. M.*, No. 3:07-CV-01484 (WWE), 2009 WL 2514064, at *8 (D. Conn. Aug. 7, 2009). The district must evaluate the student within a reasonable time after having *notice*

of the behavior that gives reason to both criteria. *Boutelle, citing W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir. 1995) (abrogated on other grounds) (emphasis in *Boutelle* case) (holding that the child-find duty requires children to be identified and evaluated "within a reasonable time after school officials are *on notice* of behavior that is likely to indicate a disability"). There is no bright line rule for what is considered to be a reasonable amount of time as "what constitutes reasonable time in light of the information and resources possessed by a given official at a given point in time." *W.B.* 67 F.3d at 501.

12. The SEHO erred as a matter of law in concluding that the need for counseling services, by itself, evidences a need for special education. The IDEA regulations provide, ". . . if it is determined, through an appropriate evaluation under §§300.304 through 300.311, that a child has one of the disabilities identified in paragraph (a)(1) of this section, but only needs a related service and not special education, the child is not a child with a disability under" 34 CFR §300.8.  34 CFR §300.8(a)(2)(i).

13. The SEHO erred in concluding that there was a reason to suspect that K.M.'s scoliosis impacted her educational benefits and created a need for special education based on a statement in the Healthcare Plan that scoliosis creates a "*potential* for 'impaired educational, social, and coping skills*"* (emphasis added) (see FF/CL 35 and discussion at pg. 37-39).

14. The SEHO erred as a matter of law in awarding Defendants compensatory services (including 1:1 tutoring for reading and counseling) when K.M. has not yet been

determined to be eligible as a student with a disability under the IDEA. A student is not entitled to compensatory services under the IDEA unless the student is eligible as a student with a disability under the IDEA. The evidence at hearing was insufficient to support a finding or conclusion that K.M. is a student with a disability under the IDEA. The SEHO acknowledged this on pg. 58 of the DPH Decision: "Second, this case is not at the point of twice-exceptionality being established – it remains at the evaluation and eligibility stages . . . ."

15. The SEHO erred as a matter of law in ordering LCPS to provide reading tutoring "to bring [K.M.] to her 11th grade reading level from her current 9th grade level, consistent with her gifted abilities" as "a remedy for the denial of gifted services due to Student's Mother's inability to meaningfully participate in the gifted state February 8, 2021 IEP" (pg. 54 of DPHO Decision). The IDEA does not provide for special education to meet the potential of gifted students. Reading instruction as part of K.M.'s gifted IEP was not an issue in the DPH Proceeding.

16. The SEHO erred as a matter of law in ordering compensatory counseling services because K.M. has not yet been identified as a student with a disability under the IDEA. Additionally, if a student needs a related service only, the student is not eligible under the IDEA.

17. The SEHO erred in ordering counseling to be provide by a "licensed counselor" as this term is not clear, and counseling services in public schools are

7

typically provided by a social worker. There was no evidence that counseling services must be provided by a licensed counselor. Additionally, appropriate counseling is available through the private clinic housed at the LCPS high school campuses. There was no evidence that this counseling would be inadequate, and the SEHO's finding that the counseling was "generic" and somehow deficient merely because it is available to all students is clearly erroneous and not supported by the evidence.

18. The SEHO's order for counseling that is "fluid" and that must "continue until the Student reaches that place where she should be absent the deficiency due to the child find violation of FAPE" is impermissibly vague.

19. The SEHO erred in considering K.M.'s unique needs as a gifted student as a basis for determining that the District should have suspected that K.M. requires special education and related services. While a district is required to consider the unique needs of a student when developing the IEP, the unique needs of students who are gifted do not create a heightened obligation of the District to evaluate a student for special education and provide an IEP that maximizes the potential of a gifted student.

20. Similarly, the SEHO erred as a matter of law in considering K.M.'s unique circumstances of being on the dance team and having to take a break from dance due to her scoliosis as a basis for suspecting an orthopedic impairment.

21. The Decision of the SEHO is hereby reversed.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**